Susie J. McCarty, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

226

Argued December 5, 1977, before Judges WILKINSON, JR., ROGERS and DiSALLE, sitting as a panel of three.

*John M. Humphrey,* for petitioner.

*Michael Klein,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for respondent.

OPINION BY JUDGE WILKINSON, JR., January 5, 1978:
This is an appeal of an order of the Unemployment Compensation Board of Review (Board), dated November 12, 1976, affirming a decision of the referee which denied benefits to Susie J. McCarty (claimant) finding the claimant had voluntarily quit work. The sole question presented for decision in this case is whether there is substantial evidence to support the Board's finding that claimant voluntarily left work within the meaning of Section 402(b)(1) of the Un-

employment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b)(1). We conclude there is not and must reverse.

Claimant was last employed by the Pennsylvania Game Commission at the Loyalsock Game Farm working in the pheasant raising operation. On her last day of work, July 13, 1976, she was working in the catching pen when a fellow employee threw a pheasant in her face causing a bleeding cut on her chin. It is uncontradicted that claimant immediately told the supervisor of the crew in the catching pen that she was going home. It is quite apparent that he understood the reason for her leaving, inasmuch as he asked the employee who had thrown the bird into claimant's face why he had done it. Further, it is uncontradicted that claimant then went to see the main superintendent who lived and had his office on the Loyalsock Game Farm. On finding that he was not at his office-residence, claimant reported the incident to his wife and said she was going home *because she could not stop the bleeding.*

Thereafter, claimant left work and did not report back or further notify her employer until July 16, 1976, three days later. Claimant had consulted a physician who advised her not to return to work for a week. When she presented an excuse slip from her physician to her supervisor, she was told her job was no longer available.[1]

The record further reveals that there was a misunderstanding between the employer and the claimant

---

[1] The record is unclear as to the precise date the claimant presented the doctor's excuse to her supervisor. Both made contradictory statements during the hearing before the referee. The Board did not make a specific finding of fact, but it appears claimant talked with her supervisor Friday, July 16, 1976, and presented the excuse slip either that day or the following Monday.

as to the events subsequent to the pheasant-throwing incident. Claimant testified she did not contact her supervisor on July 14th or 15th to report the reason for her absence because he was aware of the circumstances and therefore she did not believe that her job was in jeopardy. Her supervisor testified he assumed claimant's failure to report meant that the incident had caused her to quit of her own accord. We can find no support in the record for such an assumption.

It is irrelevant for the purpose of deciding this case which of these interpretations the Board or the referee accepted. In either case the facts do not support the conclusion that claimant voluntarily terminated her employment. Claimant was either fired for failure to report for work, as her employer understood or she did not report to work for a valid medical reason, as she understood. In either case, the failure of the claimant to notify her supervisor that she would not report to work on the three days in question constituted unauthorized absences and not a voluntary termination of employment. *See Firmstone v. Unemployment Compensation Board of Review,* 29 Pa. Commonwealth Ct. 158, 370 A.2d 749 (1977).

Regarding unauthorized absences, this Court has said that when an employee is absent from work without permission such absenteeism may constitute just cause for dismissal[2] but does not constitute "voluntarily leaving work" under Section 402(b)(1) of the Law. *Hutt v. Unemployment Compensation Board of Review,* 28 Pa. Commonwealth Ct. 57, 367 A.2d 390 (1976). In *Hutt,* the claimant informed his employer that he would be absent from work due to illness on

---

[2] If the Board had ruled claimant ineligible on the ground of wilful misconduct under the provisions of Section 402(e) of the Law, this case may have had a different result. However, we cannot assume that the Board would have found wilful misconduct on the part of claimant when it did not consider the question.

Tuesday but did not contact his employer again until Friday at which time the employer notified the claimant that he had quit. We held that the only action taken regarding the termination of claimant's employment was taken by the employer and that the claimant had not voluntarily left his work. We believe the facts in this record cannot be distinguished from those in *Hutt* and therefore conclude that our holding in that case is controlling.

The Board, however, contends that this case is controlled by those cases in which we have held that absence from work may become a voluntary termination through an unreasonable amount of time. *See Unemployment Compensation Board of Review v. Tate,* 22 Pa. Commonwealth Ct. 4, 347 A.2d 501 (1975). The Board cites testimony in the record that the employer was at the height of the growing season and needed a full complement of workers at the time of the absences. The test of a reasonable length of time, however, must be measured by all the circumstances known by both the employer and employee. We do not believe that this three day absence can constitute an unreasonable length of time when the employer knew the reason for claimant leaving the job in the first instance.

Accordingly, we will enter the following

ORDER

AND Now, January 5, 1978, the order of the Unemployment Compensation Board of Review No. B-136771, dated November 12, 1976, is reversed and the matter remanded for a computation of benefits.